[Civ. No. 25126.   Second Dist., Div. One.   Mar. 9, 1962.]

PICO CITIZENS BANK, Plaintiff and Respondent, v.
TAFCO INC., Defendant and Appellant.

Nicolas Ferrara for Defendant and Appellant.

Betts, Ely & Loomis, Forrest A. Betts, Burton & Gauldin and R. Jackson Gauldin for Plaintiff and Respondent.

LILLIE, J.—This is the second appeal in this case. Plaintiff as assignee of Moos Manufacturing Co. sought a judgment in replevin for the possession of a quantity of knife and scissor sharpeners or their value in the event of nondelivery (Code Civ. Proc., § 667). Plaintiff prevailed at the first trial, the judgment ordering defendant to pay damages in the sum of $2,000 as and for shortages in the quantities of sharpeners actually replevined prior to trial by claim and delivery. The judgment was thereafter reversed without further order or direction to the trial court (*Pico Citizens Bank* v. *Tafco Inc.*, 165 Cal.App.2d 739 [332 P.2d 739]). Upon the second trial plaintiff again prevailed, and defendant has again appealed.

There is no dispute as to certain salient facts. They are set forth in the opinion on the prior appeal in which certain determinations were made with respect thereto. On or about September 22, 1954, Moos and Tafco entered into a written contract by which Moos agreed to manufacture, and Tafco agreed to sell, the sharpeners in question. In the form of a letter signed by L. E. Crowley, Tafco's president, the contract confirmed various oral agreements theretofore reached; among other things, the agreement provided that title to the sharpeners would remain in Moos until they were sold by Tafco to third parties. Said the court on the previous appeal: "The explicit language of the agreement: 'It is your [Moos's] merchandise until it is sold' precludes any other conclusion" (p. 743). It was further there pointed out that "While not strictly a contract of consignment under which one delivers possession of goods to another for the purpose of sale with title remaining in the former, the agreement here bears a close resemblance thereto" (p. 744).

Another clause in the contract, material to this second appeal, was as follows: " 'In the event it [the contract] is cancelled by either party, the above arrangement will remain in effect until you [seller] have been paid for the merchandise delivered and the dies and other equipment of ours returned to us. Neither party shall terminate any part of this agreement without giving the party ninety (90) days written notice in advance' " (p. 742). It was determined on the prior appeal that Tafco, in the event of cancellation under this clause,

had the continuing right for a reasonable time to possession of the articles in its possession for the purpose of selling such merchandise—contrary to the finding of the trial court that Tafco had no right to possession of any *unsold* sharpeners stored on its premises. The reviewing court thus rationalized its conclusion in this regard: "In view of the fact that the parties had agreed that the agreement could be terminated by either they undoubtedly contemplated that at the time of the cancellation the defendant might have on hand a quantity of the manufactured articles remaining unsold and for which orders might reasonably be expected thereafter as the result of the defendant's prior advertising and selling efforts." (Pp. 747-748.) In reaching the above result it was assumed, but not decided, that there was support for the finding that a notice of cancellation was given by Moos within the meaning of the agreement.

As a result of the simple reversal of the previous judgment, the matter proceeded to trial a second time with the cause "at large for readjudication [of] all issues involved in the case" (*De Hart* v. *Allen*, 26 Cal.2d 829, 833 [161 P.2d 453]), and with "the parties in the same position as if the case had never been tried" (*Forgeron Inc.* v. *Hansen*, 169 Cal.App.2d 832, 834 [338 P.2d 10]). Tafco subsequently conceded, however, that title to the sharpeners (as distinguished from the right of possession thereto) remained in Moos until the goods were sold. In view of that concession, therefore, there remained for determination at the second trial (1) whether the contract in suit was in fact cancelled and, if so (2) whether a reasonable time thereafter had elapsed within which Tafco could have sold the goods remaining in its possession. Findings favorable to plaintiff on these issues were rendered by the trial court; the claimed insufficiency of the evidence to support such findings forms the principal basis of this appeal.

We first summarize the events leading up to and involving the asserted cancellation of the agreement. Following execution of the contract, and pursuant thereto, large quantities of sharpeners were manufactured and delivered by Moos to Tafco; the latter, in turn, sold the merchandise to various accounts, among whom were certain chain stores. There was testimony that the Safeway account would require production of 5,000 units per week for a period of one year; predicated upon that prospect and Tafco's request therefor, Moos produced and stored with Tafco stocks of the merchandise in

quantities much more numerous than would have been manufactured except for the Safeway account. Deliveries on that account commenced about the first part of January 1955; Safeway, however, terminated its order some 90 days later—the last delivery being about March 31, 1955. Moos, having borrowed funds from plaintiff in order to manufacture the large number of units required by the anticipated continuance of the Safeway account, found itself facing financial difficulties unless the sharpeners were sold to other outlets; Tafco was notified to that effect. On May 10, 1955, a registered letter was sent to Tafco in which reference was made to "recent and numerous conversations with yourself [Tafco's president] wherein emphasis has been placed on the need for relief for Moos Manufacturing Company from the untenable situation which the absence of continuing sales thru Tafco's efforts has placed on your manufacturing source for these items." After itemizing the merchandise manufactured and that sold and unsold, the letter concluded as follows: "Had the program gone on as represented this balance no doubt would have been liquidated before this date, and as you know, on the basis of your representation of a firm program to our bank, credit was obtained on the promises thereof for an obligation that it is necessary be dealt with without delay. We are forced therefore, to request payment in full of the outstanding balance on our customary terms of net 30 days."

On or about June 24, 1955, Moos served on Tafco a document entitled "Notice of Rescission and Demand for Return of Property." Included therein was a formal demand for the return of 60,309 Tafco Scissor Sharpeners and 56,913 Tafco Knife Sharpeners "now held by you . . . This same demand has been made upon you on several previous occasions." Tafco thereafter refused to deliver the sharpeners and continued to sell to its customers from the stockpile (already accumulated) through October 1955; in that regard, it was admitted by Tafco's president that no accounting of these sales was made to Moos after June 27th of 1955.

Following the assignment (September 15, 1955) by Moos to plaintiff of all its interest in and to the sharpeners, the instant litigation was commenced; contemporaneously therewith and by resort to the auxiliary remedy of claim and delivery, some but not all of the articles were replevined on November 9, 1955. The shortage in the number of sharpeners demanded and those replevined apparently resulted either from the sale of said sharpeners by Tafco or its use of them

as samples—the contract value of the sharpeners unaccounted for was, by stipulation, fixed at $2,402.45 (the amount of the judgment appealed from).

Finally, it was found "That the financial records of Tafco established that in only one month during the years 1955 and 1956 did Tafco ever show a business profit and that was the month of November 1956, the month during which the sharpeners were repossessed by the replevin action; that said financial records introduced in evidence or testified to, establish that during the period of time involved in the contract at issue in this case, Tafco operated at an average monthly loss of $1,500.00; that there is no showing that Tafco could, over any given period of time up to the time of the trial of this case, have sold the sharpeners which are the subject of this controversy in such a manner or at such a price or under such circumstances as to make a profit therefrom; that there is no proof of a money value loss to Tafco with reference to these sharpeners in any event."

It was further found "That the dies and tools necessary for or incident to the manufacture of the knife and scissors sharpeners were, at all times, reproducible on the die and tool market at reasonable prices; that the sharpeners in controversy are not of such individualistic or unique character that they could not have been manufactured by persons other than Moos in the manufacturing business; that it was possible for Tafco to secure other manufacturers, or to have the parts manufactured and assembled the sharpeners itself, as it had done before the Moos contract, and as it did after the Moos contract; that the sharpeners involved in this action were not, in and of themselves, necessary or required items incident to the continuation of Tafco's business of marketing knife and scissors sharpeners; that so far as the parties to this action are concerned, and so far as this litigation is concerned, Tafco could have continued in the knife and scissors sharpener business by securing the manufacturer or assembly of sharpeners through its own or other agencies."

Taking up the first of Tafco's major points on appeal, it is contended that neither the letter of May 10, 1955, nor the notice of rescission received by Tafco on June 24, 1955, served to cancel the contract within the meaning of the subject agreement. Emphasized by Tafco is the claim that the word "cancel" is not found in either document. Thus, the May 10 letter simply demanded an accounting and payment in full of the outstanding balance, while the June notice and demand

made use of the word "rescission" in its heading. ▇ There is a distinction, of course, between the terms "cancel" and "rescind"—accordingly, it has been observed that "an important problem of construction is presented by notices or agreements which purport to terminate the contract." (Witkin, Summary of Cal. Law (7th ed. 1960) 324.) Cited in the work just quoted is *Winter* v. *Kitto,* 100 Cal.App. 302 [279 P. 1024], wherein expressions of "cancellation" or "rescission" were not construed as the renunciation of any claim for damages for prior breach unless such intention clearly appears. The factual question is a close one; but two trials have resulted in findings that either or both of the documents just mentioned effected a cancellation pursuant to the terms of the agreement. ▇ "The question of whether a contract has been cancelled, rescinded or abandoned is a mixed question of law and fact [citations] which is addressed to the trial court [citations] and the finding of the trial court will be upheld if it is supported by substantial evidence." (*Ross* v. *Frank W. Dunne Co.,* 119 Cal.App.2d 690, 698-699 [260 P.2d 104].)

In the instant case there was conflicting evidence, by inference and otherwise, upon this issue. The record shows that Tafco, at least subsequent to the June 24 notice, considered the agreement terminated. As stated earlier, after June 27, 1955, no accounting of its sales was rendered by Tafco to plaintiff's assignor, and this despite the conceded fact that sharpeners (presumably those manufactured by Moos) were being sold by Tafco to its various accounts. ▇ Since "The terminology used is not controlling" (12 Cal.Jur.2d, Contracts, § 187), the inference was reasonably deducible that Tafco understood the documents to constitute a cancellation of the contract within the meaning of the agreement. The record also reveals that Tafco's president, when cross-examined on this phase of the controversy, proved to be an evasive witness—parrying questions and otherwise establishing his testimony to be unworthy of complete credence; his evasiveness, of course, is understandable in view of the finding that his company, save for one month, was operating at a loss. It thus appears that during the critical period following the termination of the Safeway account, and for an indefinite period thereafter, Tafco could not have kept its end of the bargain. Where one party is unable to perform as required by the terms of the contract, a notice of cancellation (or rescission) would have been unnecessary and an idle act. ▇ As stated by respondent, "The party abandoning the contract

cannot, after failing to perform its obligations, insist upon compliance by the .other party with reference to [a] technical notice of termination," citing *Walker* v. *Harbor Business Blocks Co.*, 181 Cal. 773, 778 [186 P. 356].

The next major point relates to the finding that a reasonable time had elapsed from the notice of cancellation within which Tafco could have disposed of the sharpeners then unsold. The trial court found that Tafco had such notice not later than June 30, 1956—obviously, and there is reference thereto in other findings, the notice in question was that served on Tafco on or about June 24, 1955. Since the property was replevined by claim and delivery on or about November 9, 1955, a period of some 130 days intervened from the notice (of cancellation) to the replevin. Plaintiff produced a witness, qualified to so testify, that in his opinion a period of 90 days would have been reasonable under the circumstances. ■ Although Tafco presented contrary testimony, "What constitutes reasonable time is always a question of fact." (*Leiter* v. *Handelsman*, 125 Cal.App.2d 243, 251 [270 P.2d 563].) We are not impressed by Tafco's argument that the period of reasonable time should be computed from the expiration of the 90-day advance notice, nor may such construction be read into the opinion on the prior appeal. Substantial evidence exists for the criticized finding, and we need pursue the matter no further.

Other assignments of error are likewise without merit. First, without citation of authority it is argued that the dismissal by Moos of an action filed prior to the assignment constituted a relinquishment of plaintiff's right to pursue the present proceeding; to the contrary, such prior action was dismissed because title to the merchandise and the claimed right to its possession had been assigned, and not otherwise. Next, but briefly and with little supporting authority Tafco claims that the assignment and bill of sale (from Moos to plaintiff) were in legal effect a chattel mortgage. It will suffice to state that the instruments in question do not warrant any such interpretation. From the foregoing erroneous premise Tafco also urges that the sharpeners were Tafco's stock in trade and may not be mortgaged. (Civ. Code, § 2955, subd. 3.) If it may be said that the sharpeners were stock in trade, they were those of the manufacturer—in this case, plaintiff's assignor, and not Tafco. ■ Finally, it is contended that the findings of fact are ambiguous, contradictory and inconsistent. There is a measure of validity to this claim in that, as

mentioned earlier, reference is made to the year 1956 as the date of certain events material to the controversy; certainly, however, the asserted deficiencies are not grounds for reversal. Thus, if the criticized findings had been made in accordance with the evidence, they would not have been more favorable to Tafco than the findings which were made. (*Chamberlain* v. *Wakefield*, 95 Cal.App.2d 280, 292 [213 P.2d 62].)

The judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 2, 1962.