[Civ. No. 17960. Third Dist. Jan. 30, 1981.]

STAR PACIFIC INVESTMENTS, INC., Plaintiff and Respondent, v. ORO HILLS RANCH, INC., et al., Defendants and Appellants.

448

## COUNSEL

Jesse W. Jack and David J. Rude for Defendants and Appellants.

George Robison for Plaintiff and Respondent.

## OPINION

CECCHETTINI, J.*—Oro Hills Ranch, Inc. (Oro Hills), Harry A. Lincoln, and J. Eldon Gresham (collectively referred to as defendants) appeal from a judgment cancelling an agreement between Oro Hills and plaintiff Star Pacific Investments, Inc. (Star Pacific) and an order awarding Star Pacific $2,500 in attorney fees. For the reasons which follow, we affirm the judgment and order.

### FACTS[1]

The transactions involved in this action revolve around an option to purchase certain real property in Butte County for $300 per acre ex-

---

*Assigned by the Chairperson of the Judicial Council.

[1]The statement of the facts is slightly complicated by the fact that the parties resorted to a settled statement of facts. Defendants moved this court for a new trial based upon the inability to transcribe the deceased court reporter's notes. On November 9,

ecuted on March 15, 1966, between Edward and Ruth Lane, as optionors, and Howard Olson and Harry Lincoln, as optionees.

Thereafter, following several transfers not relevant to this appeal, the option was assigned to Oro Hills on December 10, 1969. J. Eldon Gresham, a realtor, was the secretary/treasurer and Harry Lincoln was the president of Oro Hills. Howard Olson was another officer and shareholder of the corporation. Lincoln was also a real estate salesman for Gresham, and the executor of the estate of Edward I. Lane, one of the original optionors.

On January 19, 1970, Oro Hills sold the option to R. J. Hunter Developments, Ltd., for $20,000 plus an agreement to pay a $50 "override" to Oro Hills for every acre bought pursuant to the option. On March 9, 1972, R. J. Hunter Developments, Ltd. sold the option back to Oro Hills for $1,000. This assignment from R. J. Hunter Developments expressly cancelled the override agreement.[2]

---

1978, this court denied the motion, but directed the Butte County Clerk to entertain an application to proceed via a settled statement.

Additionally, defendants' motion to consolidate their appeal from the judgment with their appeal from the order awarding attorney fees was granted by this court on March 1, 1980. However, both the judgment (dated July 5, 1978) and the subsequent order awarding attorney fees (dated Sept. 11, 1978) contain an award of $2,500 attorney fees.

[2]The March 9, 1972, sale agreement between Oro Hills and R. J. Hunter Developments, Ltd. provided in relevant part: "... the Agreement [of January 19, 1970] between R. J. HUNTER DEVELOPMENTS, LTD., and ORO Hills Ranch, Inc. as follows:

. . . . . . . . . . . . . .

'It is hereby understood and agreed that the undersigned or its assigns shall upon the sale or transfer or any part or parcel of the described subject property ... attached hereto and made a part hereof, give to ORO Hills Ranch, Inc., a Note and third (3rd) Deed of Trust upon the property being conveyed. Said note shall be payable semi-annually, including interest at the rate of seven (7%) percent per annum, term of note shall not exceed five (5) years. Individual notes and deed of trust shall be based upon FIFTY DOLLARS ($50.00) per gross acre and multiplied by the number of acres or fraction thereof being conveyed. This agreement shall be binding upon the heirs, executors, administrators or assigns of the respective parties hereto.

. . . . . . . . . . . . . . ,

is by the signing of this Agreement, waived and to be of no further use or effect and to be considered null and void."

The next day, on March 10, 1972, Oro Hills assigned the option agreement to Richard J. Hunter and his wife Donna R. Hunter for $1,000. No new written agreement for the payment of an override interest to Oro Hills was executed at the time of this transfer to the Hunters.

In March of 1972 the Hunters exercised the option and purchased 160 acres of property. No "override" payment was ever made to Oro Hills as a part of that transaction.

In the fall of 1973, the Hunters asked Lincoln to find a purchaser for their option.[3]

In the fall of 1973 Manuel Naranjo, a real estate salesman for Hadley Real Estate told Garcia, president of Star Pacific and an experienced real estate broker, that the property subject to the option was for sale, and advised Garcia to contact Gresham and Lincoln if Star Pacific were interested in purchasing the property. Garcia contacted Gresham, who referred him to Lincoln.

Star Pacific's offer to purchase the property was rejected by defendants; however, defendants offered to sell Star Pacific the option agreement.

Garcia testified to the following: Lincoln represented to Garcia that Richard Hunter owned the option agreement and that Oro Hills had an interest in the option agreement. Lincoln further told Garcia that Richard Hunter and his wife would sell the option agreement to Star Pacific for $20,000 on the condition that Star Pacific pay Oro Hills $50 for each acre purchased under the option. Lincoln told Garcia that the $50 per acre override included an agreement to pay $7 per acre therefrom to Hadley Real Estate as a commission for obtaining a purchaser. Garcia agreed to pay the commissions directly to Hadley and therefore Lincoln agreed to reduce the override to $43 per acre.

On January 16, 1974, Garcia and Lincoln, as president of Oro Hills, executed an agreement which provided for the payment of $43 to Oro Hills for each acre purchased under the option.

---

[3]The Hunters decided that they would rather sell the option than meet its minimum purchase requirements of 160 acres every 2 years.

Garcia requested Lincoln and Gresham to show him all the documents involving Richard Hunter, Star Pacific and Oro Hills relating to the purchase of the option agreement. In response, on January 17, 1974, Lincoln and Gresham, on behalf of Oro Hills signed a "certification" which stated that "... there are no additional monetary agreements outstanding over and above the executed documents, by and between, RICHARD J. HUNTER DEVELOPMENTS, LTD., STAR PACIFIC INVESTMENTS, INC., AND ORO HILLS RANCH, INC., either as individuals or as a corporation." At the same time as this "certification," and prior to the close of escrow, Garcia was shown the January 19, 1970, agreement (between Oro Hills and R. J. Hunter Developments, Ltd.) creating an override interest of $50 per acre in favor of Oro Hills. Garcia was not shown the March 9, 1972, agreement (between Oro Hills and the Hunters) which cancelled the override interest.

An assignment of the option agreement from the Hunters to Star Pacific was signed by the Hunters on January 21, 1974, and by Garcia on March 15, 1974, at the close of escrow.

On March 21, 1974, Garcia, as president of Star Pacific, executed a promissory note in the amount of $9,478.40 to Oro Hills as payment for the exercise of the option by Star Pacific to purchase 220.43 acres, and was in addition to the payment of $300 per acre to Edward and Ruth Lane, optionors. This note was secured by a deed of trust, which required semi-annual installment payments of $1,126.20 beginning on October 1, 1974.

Garcia testified he met with Richard Hunter only once prior to the close of escrow in the office of the title company while all documents were being executed, and Garcia did not converse with Hunter at that time.

After the close of escrow, Garcia became suspicious of the existence of any proprietary interest of Oro Hills in the option agreement because the signature on behalf of Oro Hills did not appear on any of the option transfer documents Garcia received from the escrow closing. Garcia discovered the existence of the March 9, 1972, agreement cancelling the override interest after the close of escrow. Garcia testified that had he known that Oro Hills had no interest in the option agreement, he would not have entered into the January 16, 1974, agreement with Oro Hills to pay Oro Hills a $43 per acre override.

Garcia acknowledged that by virtue of its agreement with Oro Hills and its option agreement with the Hunters, Star Pacific was purchasing 220 acres for $343 per acre and thus it got what it paid for.

Lincoln testifed as follows: the option was held by Richard J. Hunter and Associates and Richard J. Hunter wanted to sell the option agreement. In order to protect their interest in the option agreement, Gresham, Lincoln, and Olson required an override in negotiating the sale with Star Pacific. Lincoln explained to Garcia how the override would work, i.e., $50 per acre was to be paid to Oro Hills Ranch, Inc., by Star Pacific whenever any of the acreage was sold or transferred pursuant to the exercise of the option. Lincoln advised Garcia of the prior override agreements in which Oro Hills Ranch had been involved. Lincoln showed Garcia the option agreement but did not remember whether he showed the January 19, 1970, override agreement between Oro Hills and R. J. Hunter Developments, Ltd. to Garcia. The override agreement was reduced from $50 to $43 per acre because Garcia represented that he (Garcia) would pay the broker's commission due Richard C. Hadley.

The override agreement was discussed in Hunter's office with Garcia in Hunter's presence and with no objection from him.

Lincoln also testified that Gresham prepared the "certification" shown to Garcia.

Gresham testified as follows: R. J. Hunter Developments, Ltd. had assigned the option agreement to Oro Hills on March 9, 1972, and Oro Hills reassigned the option agreement to Richard J. Hunter as an individual. Gresham understood that the reassignment was to retain the $50 override agreement and that Hunter had verbally committed himself to continue to be bound by his obligation to pay the $50 per acre override. The override agreement with Hunter existed at the time of the sale to Star Pacific and the only reason the override was removed in the assignment from Hunter Developments Ltd. was Hunter's convenience in transferring the option from the corporation to himself individually. Hunter did not want that transfer of the option to trigger the override.

Gresham further testified that he could not remember discussing the agreement with Garcia at any time but that he believed that Oro Hills had an interest in the option in the form of an override agreement at

the time of the sale to Star Pacific. He also admitted he had signed the "certification" shown to Garcia.

Gresham testified that Richard Hunter did not list his option for sale through J. Eldon Gresham, realtor and Oro Hills never listed its interest in its option agreement with J. Eldon Gresham, realtor.

Although not contained in the record, the parties do not dispute that Oro Hills recorded a notice of default after Star Pacific failed to make its first payment on the installment note. Oro Hills then proceeded toward exercise of the power of private sale pursuant to the deed of trust.

In response, Star Pacific filed a complaint to quiet title and cancel its agreements with Oro Hills, and enjoin the foreclosure, alleging lack of consideration and fraudulent misrepresentation by Oro Hills, Lincoln, and Gresham.

The trial court rendered judgment for Star Pacific, determining that the January 16, 1974, agreement and the subsequent installment note of March 21, 1974, and the deed of trust between Star Pacific and Oro Hills were void and cancelled. The court further found that Oro Hills, Lincoln, or Gresham had no right, title or interest in the original option agreement of March 15, 1966. The court also found that Star Pacific reasonably relied upon the intentional and false misrepresentation of Oro Hills, Lincoln, and Gresham that defendants had an interest in the option, and that Star Pacific would not have entered into the agreement with Oro Hills had it known that defendants lacked any interest in the option. The court also found that Star Pacific's agreements with Oro Hills were not supported by any consideration. The court further ordered that Star Pacific recover attorney fees in the amount of $2,500 under Civil Code section 1717.

## DISCUSSION

Defendants first contend that the assignments of the option to Star Pacific is sufficient consideration to support the promise to pay Oro Hills $43 for every acre sold under the option. The fatal flaw in this contention is that such a promise was not extracted from Star Pacific by the Hunters. The assignment of the option to Star Pacific by the Hunters made no reference whatsoever to the override provision; it merely assigned the option to Star Pacific in exchange for payment of $20,000 to the Hunters. The Hunters could have agreed with Star

Pacific to assign their option to Star Pacific in exchange for payment of $20,000 to them and payment of $43 to Oro Hills for every acre sold under the option, thereby making Oro Hills a third party beneficiary of the agreement; the fact is that the Hunters did not do so.

The evidence demonstrates that Oro Hills neither incurred any detriment nor conferred any benefit upon Star Pacific as a result of either its agreement with Star Pacific or the Hunters' assignment of the option to Star Pacific. In short, in one transaction Star Pacific agreed to pay the Hunters $20,000 in exchange for an option to purchase certain property and in another transaction agreed to pay $43 for each acre purchased under the option to Oro Hills, in return for nothing from Oro Hills. The transactions were separate.

Although a written instrument is presumptive evidence of consideration (Civ. Code, § 1614) and the burden of proof is upon the party seeking to invalidate an agreement for lack of consideration (Civ.Code, § 1615), the presumption is rebuttable, and lack of consideration may be shown by extrinsic evidence. (See 1 Witkin, Summary of Cal. Law (8th ed. 1973), Contracts, § 154, pp. 147-148 and cases there cited.) Here the evidence presented was sufficient to sustain Star Pacific's burden of showing the lack of consideration and to rebut the presumption. The March 9, 1972, agreement between Oro Hills and R. J. Hunter Developments, Ltd. expressly voided the previous override agreement, and the Hunters made no payment to Oro Hills pursuant to any override agreement when they subsequently exercised their option to purchase. Although conflicting evidence was presented regarding an alleged unwritten understanding between Oro Hills and Hunter regarding the override payment, that conflict was resolved against defendants, and thus may not be disturbed on appeal. (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 234 et seq. at pp. 4225, 4236-4238, and cases there cited.) We conclude that there is substantial evidence to support the finding that the agreement between Star Pacific and Oro Hills lacks consideration.

■ Defendants next argue that the judgment cannot be sustained on the grounds of fraud because Star Pacific failed to present any evidence of its damages caused by the misrepresentation, which is an essential element of a cause of action in tort for fraud. We reject the contention.

First, the argument overlooks the fact that there is a sound basis for invalidating the agreement for its lack of consideration. A judgment

otherwise correct in law will not be disturbed on appeal merely because given for the wrong reason. (*D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 19 [112 Cal.Rptr. 786, 520 P.2d 10].) Where inconsistent counts are pleaded, the appellate court may disregard particular theories and findings and affirm the judgment on a theory supported by the findings and the evidence. (*Crogan* v. *Metz* (1956) 47 Cal.2d 398, 403 [303 P.2d 1029].)

Second, the argument assumes that the judgment rests solely upon a tort cause of action for fraud. We agree with the fundamental proposition that damages are an essential element of a tort cause of action. However, as discussed *infra*, the judgment was not based upon a tort cause of action for fraud.

Finally, for purposes of invalidating the agreement, it appears obvious that Star Pacific's apparent liability under the agreement to pay $43 for each acre purchased pursuant to the option to one who lacked any interest in the option is sufficient injury to support a judgment invalidating the agreement. Moreover, Civil Code section 3412 provides: "A written instrument, in respect to which there is a reasonable apprehension that if left outstanding it may cause serious injury to a person against whom it is void or voidable, may, upon his application, be so adjudged, and ordered to be delivered up or canceled." It appears equally obvious that had the agreement been allowed to stand, Star Pacific would have been forced to pay $43 for every acre purchased under the option to Oro Hills in return for nothing from Oro Hills. This "exchange" certainly qualifies as adequate damage to Star Pacific to rescind the agreement. (See *Stout* v. *Turney, infra*, for excellent discussion of fraud damages.)

Defendants quite correctly state that in order to obtain rescission of an agreement, including rescission on the basis of inducement into the agreement by the defendant's fraudulent misrepresentation, a plaintiff must generally restore to the defendant everything of value which the plaintiff has received from defendant under the agreement. (See Civ. Code, § 1691;[4] *Flemming* v. *Kagen* (1961) 189 Cal.App.2d 791,

---

[4]Civil Code section 1691 provides: "Subject to Section 1693, to effect a rescission a party to the contract must, promptly upon discovering the facts which entitle him to rescind if he is free from duress, menace, undue influence or disability and is aware of his right to rescind: (a) Give notice of rescission to the party as to whom he rescinds: and (b) Restore to the other party everything of value which he has received from him under the contract or offer to restore the same upon condition that the other party do likewise, unless the latter is unable or positively refuses to do so. When notice of rescis-

796-796 [11 Cal.Rptr. 737].) From this conclusion, defendants appear to argue that Star Pacific should not be permitted to retain its assignment of the option from the Hunters. The suggestion ignores the fact that one basis of the judgment, for which we have found substantial evidence, was that the agreement between Star Pacific and Oro Hills lacked consideration. There was thus nothing of value for Star Pacific to restore to Oro Hills. Moreover, the Hunters, with whom the agreement regarding the assignment of the option was made, apparently have not complained of any inequity.

█ Defendants contend that there is insufficient evidence to support a finding of intentional misrepresentation by Gresham. The contention is without merit.

Although evidence disclosed that Lincoln had most of the contacts with Garcia, Lincoln testified that Gresham prepared the "certification" stating there were no outstanding monetary agreements between the parties other than their unspecified executed documents and Gresham himself admitted he had signed the certification. Additionally, the previous assignment of the option from Oro Hills to the Hunters expressly voided the override provision and Hunter made no payment to Oro Hills when he exercised the option. This was sufficient circumstantial evidence to support the finding of intentional misrepresentation by Gresham.

█ Defendants next contend that the trial court erred in awarding Star Pacific $2,500 in attorney fees under Civil Code section 1717.[5] Essentially they argue that the award cannot be sustained since Star Pacific's complaint was based solely in tort for fraud in derogation of the contract, and thus it was not an action "on the contract" as required for an award of attorney fees under Civil Code section 1717. We reject the contention.

The agreement of January 16, 1974, between Oro Hills and Star Pacific contained no provision for attorney fees. Defendants acknowl-

---

sion has not otherwise been given or an offer to restore the benefits received under the contract has not otherwise been made, the service of a pleading in an action or proceeding that seeks relief based on rescission shall be deemed to be such notice or offer or both."

[5]Civil Code section 1717 provides in relevant part: "In any action on a contract, where such contract specifically provides that attorney fees and costs, which are incurred to enforce the provisions of such contract, shall be awarded to one of the parties, the prevailing party, whether he is the party specified in the contract or not, shall be entitled to reasonable attorney fees in addition to costs and necessary disbursements."

edge that the installment note of March 21, 1974, included the following provision: "Should suit be commenced to collect this note or any portion thereof, such sums as the Court may deem reasonable shall be added hereto as attorney fees." However, defendants overlook the fact that the deed of trust[6] signed by Star Pacific and Oro Hills required the trustor (Star Pacific) "to pay all costs and expenses, including . . . attorney fees in a reasonable sum, in any action or proceeding in which Beneficiary [Oro Hills] or Trustee may appear, and in any suit brought by Beneficiary to foreclose this Deed."

In *Care Constr., Inc.* v. *Century Convalescent Centers, Inc.* (1976) 54 Cal.App.3d 701 [126 Cal.Rptr. 761], a lessor sued the defendant lessee to recover damages for breach of a lease. The lessee successfully defended on the basis that no lease or binding agreement between the parties existed. The purported lease provided that the lessee would pay reasonable attorney fees to the lessor in the event of any litigation.

The court awarded attorney fees on appeal, holding that in an action on a purported lease providing for attorney fees for the lessor, a lessee who successfully defends on the theory that there was no valid or enforceable lease is entitled to attorney fees under section 1717. (*Id.*, at p. 707.) The court felt this result was justified in order to achieve the purpose of mutuality expressed in the code section, noting that generally the section was designed to remedy the unfairness of unilateral attorney fees clauses usually inserted by the party with superior bargaining power. The court noted that plaintiff would have been entitled to attorney fees if it had proved that a valid lease had been breached by the defendant. (*Id.*, at pp. 704-705.)

In *Geffen* v. *Moss* (1975) 53 Cal.App.3d 215, 227 [125 Cal.Rptr. 687, 79 A.L.R. 1232], the court, without extensive discussion, struck an award of attorney fees upon finding a portion of an agreement for the sale of a law practice to be invalid and unenforceable as an attempt to sell the good will of a law practice. The court in *Care Constr., Inc., supra*, distinguished *Geffen* on the basis that where neither party can enforce the contract because its provisions are contrary to public policy, there is no necessity for a mutual right to attorney fees. (54 Cal.App.3d

---

[6]Although the deed of trust was never introduced into evidence, a copy of it was attached as an exhibit to the complaint and the allegations of the complaint regarding the existence and execution of the deed of trust by Star Pacific and Oro Hills were not denied by defendants in their answer. Thus, those allegations were deemed admitted. Moreover, the parties' briefs do not dispute the existence of the deed of trust.

at p. 707.) Similarly, here there is no public policy against enforcement of the purported agreement between the parties.

We are persuaded by the reasoning of *Care Constr., Inc.,* that an award of attorney fees was proper in this case. (See also *Canal-Randolph Anaheim, Inc.* v. *Wilkoski* (1978) 78 Cal.App.3d 477, 496 [163 Cal.Rptr. 30].) If defendants had prevailed below, it is certainly arguable that they would have been entitled to an attorney fee award since, at least from their viewpoint, the litigation would have been an action accomplishing enforcement of the payment of the installment note. (See *Nevin* v. *Salk* (1975) 45 Cal.App.3d 331, 338-340 [119 Cal.Rptr. 370]; *Wagner* v. *Benson* (1980) 101 Cal.App.3d 27, 37·[161 Cal.Rptr. 516].) In our view, an action founded solely in contract which determines the enforceability of a contract is an "action on a contract" within the purview of section 1717.

Defendants attempt to distinguish *Care Constr. Inc.,* on the basis that there the action was brought by a plaintiff seeking to enforce the contract, whereas the present action is one seeking to set aside the contract. However, this contention ignores the true posture of this case. As previously noted, although Star Pacific is technically cast in the role of plaintiff in this litigation, a realistic assessment of the dispute between the parties reveals that suit was initiated by Star Pacific as a defensive response to Oro Hills' proceeding to exercise its power of private sale conferred by the deed of trust, an action which can surely be characterized as seeking enforcement of the agreement between the parties.

Defendants correctly state the law in asserting that a tort action for fraud arising out of a contract is not an "action on a contract" within the meaning of section 1717 so as to permit an award of attorney fees. (*Stout* v. *Turney* (1978) 22 Cal.3d 718, 730 [150 Cal.Rptr. 637, 586 P.2d 1228]; *Walters* v. *Marler* (1978) 83 Cal.App.3d 1, 27-28 [147 Cal.Rptr. 655]; *McKenzie* v. *Kaiser-Aetna* (1976) 55 Cal.App.3d 84, 89-90 [127 Cal.Rptr. 275]; *Schlocker* v. *Schlocker* (1976) 62 Cal.App. 3d 921, 923 [133 Cal.Rptr. 485].) However, each of the above-cited cases[7] were premised upon a tort cause of action for fraud. This is not the case here.

---

[7]In *McKenzie* v. *Kaiser-Aetna, supra,* the jury was instructed on causes of action for breach of contract, breach of implied warranty, negligent misrepresentation, and restitution. The jury returned a net general verdict for plaintiff, and thus it was impossible to ascertain on which theory the jury primarily based its verdict. Because the theory of negligent representation may have been the basis of plaintiff's verdict, he was not entitled to attorney fees under section 1717. (*Id.,* at pp. 88-89.)

Fraud (in the form of intentional misrepresentation) may provide a basis for a remedy in either a tort action or in a contract action. Fraud may render a contract void or may be grounds for rescission or reformation (Civil Code, § 1689;[8] see 1 Witkin, Summary of Cal. Law (8th ed. 1973) Contracts, § 314, p. 264). It is well established that where the plaintiff contracts in reliance upon the fraud of the defendant, he may elect either the contract remedy, consisting of restitution based on rescission or the tort remedy, by affirming the contract and seeking damages. (Civ. Code, § 1692;[9] *Walters* v. *Marler, supra*, 83 Cal. App.3d 1, 16; see 2 Witkin Cal. Procedure (2d ed. 1970) Actions, § 93, pp. 964-965 and cases there cited.) Here, Star Pacific was not awarded any damages;[10] clearly the essence of its judgment, although denominated as one to "cancel"[11] the agreement, was to rescind the override agreement between the parties. The basis of the judgment was not upon a cause of action in tort, and thus the cases relied upon by defendants are inapposite.

---

[8]Civil Code section 1689, subdivision (b) provides in relevant part: "(b) A party to a contract may rescind the contract in the following cases: (1) If the consent of the party rescinding, or of any party jointly contracting with him, was given by mistake, or obtained through duress, menace, fraud, or undue influence, exercised by or with the connivance of the party as to whom he rescinds, or of any other party to the contract jointly interested with such party. (2) If the consideration for the obligation of the rescinding party fails, in whole or in part, through the fault of the party as· to whom he rescinds. (3) If the consideration for the obligation of the rescinding party becomes entirely void from any cause. (4) If the consideration for the obligation of the rescinding party, before it is rendered to him, fails in a material respect from any cause."

[9]Civil Code section 1692 provides: "When a contract has been rescinded in whole or in part, any party to the contract may seek relief based upon such rescission by (a) bringing an action to recover any money or thing owing to him by any other party to the contract as a consequence of such rescission or for any other relief to which he may be entitled under the circumstances or (b) asserting such rescission by way of defense or cross-complaint.

"If in an action or proceeding a party seeks relief based upon rescission and the court determines that the contract has not been rescinded, the court may grant any party to the action any other relief to which he may be entitled under the circumstances.

"A claim for damages is not inconsistent with a claim for relief based upon rescission. The aggrieved party shall be awarded complete relief, including restitution of benefits, if any, conferred by him as a result of the transaction and any consequential damages to which he is entitled; but such relief shall not include duplicate or inconsistent items of recovery.

"If in an action or proceeding a party seeks relief based upon rescission, the court may require the party to whom such relief is granted to make any compensation to the other which justice may require and may otherwise in its judgment adjust the equities between the parties."

[10]The complaint, however, did seek $5,000 damages.

[11]The action of the trial court is more appropriately described as rescinding the override agreement between the parties rather than cancelling it. Technically, cancellation

*Reynolds Metals Co.* v. *Alperson* (1979) 25 Cal.3d 124 [158 Cal.Rptr. 1, 599 P.2d 83] upon which defendants also rely, is also inapplicable, as the issue there involved was whether section 1717 applied to nonsignatories of the contract who were nevertheless parties to the litigation and alleged to be liable on the contract. (*Id.*, at pp. 128-129.)

In *Sciarrotta* v. *Teaford Construction Co.* (1980) 110 Cal.App.3d 444 [167 Cal.Rptr. 889], the court held that section 1717 limits reciprocity of attorney fees to those specific provisions of the contract in which attorney fees are provided for. There the building contract provided for an award of attorney fees incurred to enforce payment of the contract price to the defendant building contractor. Plaintiffs, however, sued and recovered for a breach of the contractor's failure to construct the house in a workmanlike manner. In concluding that plaintiffs were not entitled to recover attorney fees, the court determined that section 1717 was meant to have a "selective and literal application."

The *Sciarrotta* court rested its decision upon two grounds. First, it examined the precedential authorities establishing that the parties to a contract may limit the instances in which attorney fees may be recovered in litigation touching upon the contract. Second, it weighed various policy considerations which disfavored an award of attorneys fees to a plaintiff under *any* action on the contract where the unilateral attorney's fee provision in favor of the defendant is limited to a particular kind of action on the contract. Among those policy factors were to resist invitation of frivolous litigation, to avoid the encouragement of needless litigation, and to encourage settlement.

However, due to the previously discussed particular history of this litigation, those policy considerations are not offended here.

Since by appropriate language in the contract, the parties may limit the particular causes of action for which attorney fees may be recovered (see *Sciarrotta* v. *Teaford Construction Co., supra*, 110 Cal.App.3d 444; *San Luis Obispo Bay Properties, Inc.* v. *Pacific Gas & Elec. Co.* (1972) 28 Cal.App.3d 556, 571 [104 Cal.Rptr. 733]), it logically fol-

nullifies that part of the contract which remains unperformed and while future obligations are terminated, all prior accrued rights remain enforceable. In comparison, rescission, by extinguishing the contract, not only ends future liability but requires each party to restore the consideration received (or its value) to the other party (1 Witkin Summary of Cal. Law (8th ed. 1973) Contracts, §§ 679-680, pp. 572-574.) The terminology employed by the parties is not controlling. (*Pico Citizens Bank* v. *Tafco Inc.* (1962) 201 Cal.App.2d 131, 136 [19 Cal.Rptr. 905].)

lows that parties to a contract may provide for an award of attorney fees in any action to determine the enforceability of the contract. Thus, even assuming that *Sciarrotta* would preclude an award of attorney fees under the language of the promissory note, the ultimate question arises whether the language of the attorney fee provision contained in the deed of trust is sufficiently broad to serve as a basis for awarding attorney fees.[12]

Under this unqualified attorney fee provision in the deed of trust, defendant Oro Hills certainly would have been entitled to an award of attorney fees if they had prevailed below. The agreement by plaintiff to pay the beneficiary's (Oro Hills') attorney fees in "any action in which the beneficiary of the deed appears" encompasses an agreement to pay attorney fees which are incurred in an action to enforce the provisions of the contract as required by section 1717. Here, since the language of the deed of trust did not limit the situation in which attorney fees would be recoverable to any particular form of action involving the contract, the suit resulting in a judgment invalidating the purported agreement between the parties for lack of consideration and alternatively for intentional misrepresentation was an action "on the contract" which permitted an award of attorney fees under section 1717. (See *Erich* v. *Granoff* (1980) 109 Cal.App.3d 920, 931 [167 Cal.Rptr. 538].)

The award of fees against defendants Gresham and Lincoln, however, was inappropriate because they were not parties to said note and deed of trust and no other basis for their responsibility appears.

The judgment is reversed to the extent that it awards attorney fees against Gresham and Lincoln personally. Otherwise, it is affirmed. Star Pacific shall recover costs on appeal against all defendants.

Paras, Acting P. J., and Reynoso, J., concurred.

---

[12]It seems clear that this language must be construed to limit an award of attorney fees to any action between the parties to the deed and involving the deed of trust in which the beneficiary or trustee may appear. It is beyond doubt that the parties did not intend to make the trustor liable for the beneficiary's attorney fees in literally *any* action in which the beneficiary or trustee may appear, e. g., as a plaintiff in an unrelated personal injury action.