[Civ. No. 65469. Second Dist., Div. Five. Apr. 21, 1983.]

GLORIA BERGE, Plaintiff, Cross-defendant and Appellant, v.
INTERNATIONAL HARVESTER COMPANY, Defendant and Respondent;
INTERNATIONAL HARVESTER CREDIT CORPORATION,
Cross-complainant and Respondent.

COUNSEL

Nissenberg & Nissenberg and David N. Nissenberg for Plaintiff, Cross-defendant and Appellant.

Pacht, Ross, Warne, Bernhard & Sears, Ira H. Lurvey and Judith Salkow Shapiro for Defendant and Respondent and Cross-complainant and Respondent.

OPINION

ASHBY, J.—Appellant Gloria Berge (Berge) sued respondent International Harvester Company (IH) for damages arising from breach of express and implied warranties in connection with the sale of a 1975 heavy duty truck manufactured by IH. International Harvester Credit Corporation (IHCC) cross-complained against Berge for damages it incurred in repossessing the 1975 truck after Berge defaulted on her payments. The trial court granted Berge's motion for a nonsuit against IHCC, but denied her motion for the award of reasonable attorney's fees. Berge's case against IH went to the jury, which awarded her damages in the amount of $144,718.85. IH then moved for a judgment notwithstanding the verdict and for a new trial. The trial court denied the judgment notwithstanding the verdict, but granted a new trial on the issue of

damages only. Berge appeals from the order granting a new trial and from the order denying her attorney's fees against IHCC. IH has not appealed.

## FACTS

In December of 1973, Berge bought a new 1974 model truck from IH and commenced business as an owner-operator hauling goods for various trucking companies. In September of 1974, she signed a one year, automatically re-newable contract with Central Coast Trucking Company (Central Coast) which provided her with regular hauling assignments for her truck. At about this time, she started a dispatching service to assist other owner-operators in securing loads to be hauled; she hired drivers to alternate with and eventually replace her in driving the truck. The 1974 truck performed very satisfactorily.

In November of 1974, she purchased a second vehicle, a used 1970 Ken-worth truck. She then decided to trade in this used truck for a new vehicle. In reliance on IH's advertisements and sales brochures which stressed the re-liability, dependability, and power of IH's 1975 model truck, Berge purchased this vehicle in January of 1975. Her drivers immediately began to experience numerous problems with the 1975 truck, including the falling off and disinte-gration of its fan, fuel in the oil, failures of the air-conditioning and alternator systems, and missing valves and bolts. The truck's most serious problem was the engine's lack of power. Berge's drivers found it took longer to haul loads with this truck because it could not adequately negotiate hills and "almost wanted to go backward." They described the truck as "a dog" and a hazard to the public.

In late June of 1975, Central Coast terminated Berge's contract because of the 1975 truck's inadequate performance. Thereafter, Berge found it difficult to locate loads for the 1975 truck or drivers willing to operate it. As a result, the 1975 truck often remained idle. Berge fell behind in making payments on both trucks, and IHCC repossessed the 1975 truck in October and the 1974 truck in November of 1975. Berge's owner-operator business ceased to exist.

## IH'S LIABILITY FOR BREACH OF WARRANTY

Before considering Berge's appeal, we dispose of certain contentions made by IH. Although IH has not filed an appeal, in its response brief IH in effect asks us to reverse the jury's verdict on the issue of liability. IH contends that as a matter of law, its advertising and sales brochures did not create an express warranty, and that in any case, all warranties were effectively disclaimed. It re-quests not only a new trial on all issues, but also an instruction to the jury at the conclusion of the trial to reach a verdict in IH's favor. Berge has failed to perceive the novelty of IH's approach and in her reply brief discussed the merits of the liability issue.

 This issue, however, is not properly before us. The taking of an appeal is not merely a procedural step, but is jurisdictional, and where no appeal is taken from an appealable order, a reviewing court has no discretion to review its merits; the court must disregard all issues concerning the order on its own motion even if no objection has been made. (*Hollister Convalescent Hosp., Inc.* v. *Rico* (1975) 15 Cal.3d 660, 666-667 [125 Cal.Rptr. 757, 542 P.2d 1349]; *Estate of Hanley* (1943) 23 Cal.2d 120, 123-124 [142 P.2d 423, 149 A.L.R. 1250]; *Taper* v. *City of Long Beach* (1982) 129 Cal.App.3d 590, 606-607 [181 Cal.Rptr. 169]; *Beresh* v. *Sovereign Life Ins. Co.* (1979) 92 Cal.App.3d 547, 551-552 [155 Cal.Rptr. 74]; Cal. Rules of Court, rules 1-3.) Orders denying a judgment notwithstanding the verdict and granting a new trial are appealable orders (Code Civ. Proc., § 904.1, subd. (d)) and the failure to appeal from them means that the appellate court lacks jurisdiction to review their merits. (See *Smith* v. *Halstead* (1948) 88 Cal.App.2d 638, 640 [199 P.2d 379].) IH could have appealed not only from the order denying judgment n.o.v., but also from the order granting a new trial because "it is well established that a party seeking a new trial on all issues is an 'aggrieved party' when only a partial new trial is granted, and may appeal therefrom." (*Liodas* v. *Sahadi* (1977) 19 Cal.3d 278, 285 [137 Cal.Rptr. 635, 562 P.2d 316]; *Spencer* v. *Nelson* (1947) 30 Cal.2d 162, 164-165 [180 P.2d 886]; *Ferraro* v. *Pacific Fin. Corp.* (1970) 8 Cal.App.3d 339, 355 [87 Cal.Rptr. 226]; *Stegmann* v. *Holder* (1963) 223 Cal.App.2d 531, 537 [36 Cal.Rptr. 1].) Rule 3 of the California Rules of Court specifically describes the procedural steps to be taken and jurisdictional time limits to be observed in filing a cross-appeal where the opposing party appeals from an order granting a new trial. IH's failure to follow these statutory requirements renders nonreviewable all substantive issues underlying the court's orders denying the motion for a judgment n.o.v. and granting only a limited new trial. (*Ferraro* v. *Pacific Fin. Corp., supra,* 8 Cal. App.3d 339, 355-356.)[1]

 We are aware of decisions which held that on one party's appeal from an order granting a new trial, the denial of a motion for judgment n.o.v. was reviewable without appeal by the opposing party. (E.g., *Williams* v. *Fairhaven Cemetery Assn.* (1959) 52 Cal.2d 135, 138 [338 P.2d 392]; *Estate of Green* (1944) 25 Cal.2d 535, 545 [154 P.2d 692]; *Agnew* v. *Cronin* (1961) 197 Cal.App.2d 535, 543 [17 Cal.Rptr. 273].) However, at the time these cases

---

[1]Our inability to review these issues now will not create circuitry of action or waste judicial resources by merely delaying review until after a retrial is had and final judgment is entered. On appeal from a final judgment, the appellate court may not review any order from which an appeal could have been taken but was not. (E.g., *Ferraro* v. *Pacific Fin. Corp., supra,* 8 Cal. App.3d 339, 355-356 [failure to appeal from order granting limited new trial]; *Wolfson* v. *Beatty* (1953) 118 Cal.App.2d 392, 397 [257 P.2d 1017] [failure to appeal from order granting new trial]; *Code Civ. Proc.,* § 906.) This statutory scheme promotes judicial economy by compelling a litigant to raise its own objections to appealable orders at the same time that his opponent has already removed the case from the trial court for the same purpose.

were decided, section 629 of the Code of Civil Procedure *prohibited* direct appeal from a denial of a motion for judgment n.o.v. whenever a trial court had also *granted* a new trial to the moving party; to alleviate this harsh rule, review of the denial of a motion for judgment n.o.v. was available if the opposing party had already brought the case before the reviewing court by appealing the grant of a new trial.[2] Section 629 was amended, however, and again makes the denial of a motion for judgment notwithstanding the verdict appealable by the aggrieved party, regardless of whether a new trial was also granted.[3] Since the denial of the motion now is an appealable order, the possibility of review without appeal permitted by cases such as *Williams* v. *Fairhaven Cemetery Assn., supra,* 52 Cal.2d 135, is no longer supported by the statute nor warranted as an exception to the otherwise jurisdictional limitations of appellate courts. Therefore, IH's failure to file a cross-appeal to Berge's appeal in accordance with rule 3(c) precludes our review of all orders other than those Berge has appealed from.[4]

### THE ORDER GRANTING A NEW TRIAL

We next turn to Berge's appeal from the trial court's order granting a new trial on the issue of damages. The court's minute order states in pertinent part: "Motion for New Trial as to the issue of damages is granted on the ground of insufficiency of the evidence to support the amount of damages awarded and further grounds as recorded in the notes of the Court Reporter." The trial court supplied no other specifications of its reasons for granting the motion. Berge correctly points out that this procedure fails to comply with the requirements of Code of Civil Procedure section 657.

Section 657 requires the trial court to specify in its order not only the *grounds* on which it grants the new trial, but also the *reasons* for granting the order on each ground stated. If the ground relied upon is insufficiency of the

---

[2]The 1951 version of section 629 stated in pertinent part: "Where a new trial is granted to the party moving for judgment notwithstanding the verdict, the order denying the motion for judgment notwithstanding the verdict *shall not be reviewed on appeal, unless* the adverse party appeal from the order granting a new trial, in which case the order denying judgment notwithstanding the verdict *may be* reviewed on appeal." (Code Civ. Proc., § 629; Stats. 1951, ch. 801, p. 2288; italics added.)

[3]"Where a new trial is granted to the party moving for judgment notwithstanding the verdict, and the motion for judgment notwithstanding the verdict is denied, the order denying the motion for judgment notwithstanding the verdict shall nevertheless be reviewable on appeal from said order by the aggrieved party." (Code Civ. Proc., § 629; Stats. 1963, ch. 205, § 1, p. 943.) This latest amendment again conforms this portion of section 629 to its original version of 1923, which allowed an appeal from the denial of a motion for judgment n.o.v. in all cases. (Code Civ. Proc., § 629, Stats. 1923, ch. 366, § 1, p. 750.)

[4]The case of *Treber* v. *Superior Court* (1968) 68 Cal.2d 128, 133 [65 Cal.Rptr. 330, 436 P.2d 330], cited by IH, is inapposite. It merely allows independent appellate inspection of grounds for a new trial in order to *affirm* a trial court's order granting a new trial; it gives us no authority to search the record for grounds to *reverse* the trial court by ordering a new trial on all issues.

evidence, but the court fails to specify its reasons, the order cannot be upheld on this ground. (*Mercer* v. *Perez* (1968) 68 Cal.2d 104, 118-123 [65 Cal.Rptr. 315, 436 P.2d 315].) ■ The court's reasons must be contained either in the order itself or in a separately prepared and signed statement in writing filed with the clerk (*Stevens* v. *Parke, Davis & Co.* (1973) 9 Cal.3d 51, 62-63 [107 Cal.Rptr. 45, 507 P.2d 653, 94 A.L.R.3d 1059]); a statement of reasons during oral argument does not comply with section 657, and such reasons cannot be considered on appeal. (*Id.*, at p. 62; *La Manna* v. *Stewart* (1975) 13 Cal.3d 413, 422-423 [118 Cal.Rptr. 761, 530 P.2d 1073].) The trial court's reference in its minute order to its oral statement of reasons during the hearing cannot rectify the defect. (*Worden* v. *Gentry* (1975) 50 Cal.App.3d 600, 605 [123 Cal. Rptr. 496].)

Though we cannot affirm the court's order on the ground of insufficiency of the evidence, we must determine whether the record supports any other ground for granting a new trial listed in IH's motion. (*Treber* v. *Superior Court, supra,* 68 Cal.2d 128, 133-134; *In re Marriage of Beilock* (1978) 81 Cal.App.3d 713, 725 [146 Cal.Rptr. 675]; Code Civ. Proc., § 657.) Here, IH also urged a new trial be granted on the ground that the verdict was "against the law."[5] "An order granting new trial may be affirmed on this ground if stated in the motion, even though not specified in the order or supported by a specification of reasons." (*Don* v. *Cruz* (1982) 131 Cal.App.3d 695, 705 [182 Cal.Rptr. 581].)

■ A verdict is against the law only if the evidence supporting it is "insufficient in law and without conflict on any material point." (*In re Marriage of Beilock, supra,* 81 Cal.App.3d 713, 728.) Thus, our task on review is not to defer to the trial court's balancing of the relative weight of the evidence; instead, the order can be affirmed only if the verdict was "unsupported by any substantial evidence, i.e., when the entire evidence is such as would justify a directed verdict against the party in whose favor the verdict is returned." (*Kralyevich* v. *Magrini* (1959) 172 Cal.App.2d 784, 789 [342 P.2d 903]; *Sierra Pacific Industries* v. *Carter* (1980) 104 Cal.App.3d 579, 583 [163 Cal.Rptr. 764]; *Kaiser Cement & Gypsum Corp.* v. *Allis-Chalmers Mfg. Co.* (1973) 35 Cal.App.3d 948, 951 [111 Cal.Rptr. 210].) Evaluating the propriety of the order according to this standard, we must consider IH's contentions that (1) there was insufficient evidence as a matter of law to show that IH's breach of warranty proximately caused Berge's damages;[6] and (2) the evidence supporting an award of lost profits was wholly speculative.

---

[5] The additional grounds of abuse of discretion and prejudicial orders are not supported by the record.

IH's assertion that the jury's verdict was the result of improper considerations cannot be reviewed; it was not a ground urged in IH's motion.

[6] The trial court ordered that the new trial include a retrial of the proximate cause question.

A. *Proximate Cause.*

■ Damages are, of course, limited to those proximately caused by the wrong complained of, whether plaintiff's theory of recovery sounds in tort or in contract. (*State Farm Mut. Auto. Ins. Co.* v. *Allstate Ins. Co.* (1970) 9 Cal. App.3d 508, 528 [88 Cal.Rptr. 246]; Civ. Code, § 3300.) ■ Viewing the testimony most strongly in favor of the verdict, we find that substantial evidence supported a finding of proximate cause.

In 1974, Central Coast offered Berge a one year, renewable contract because she had reliable equipment and was an acceptable owner-operator. This contract enabled Berge to keep her trucks on the road and to earn regular income. The 1975 truck, however, was seriously underpowered, unable to properly negotiate elevations, and a hazard to other traffic. Its various mechanical problems resulted in downtime, and at least once Central Coast had to send out another driver to pick up a trailer the truck could not haul to its destination. James Dessell, a dispatcher at Central Coast, testified that he terminated Berge's contract in 1975 because the 1975 truck was faulty and unreliable. Work such as Berge had performed, however, continued to be available at Central Coast from 1975 until the time of trial. After Berge lost her sturdy source of work assignments, she had difficulties in securing loads for the 1975 truck; it was too unreliable to negotiate long distance hauls, short distance work was unavailable, and her drivers had become afraid of the truck. When the 1975 truck ceased to be productive, Berge fell behind in her payments and then lost both trucks. We cannot conclude that this evidence was insufficient as a matter of law to support the jury's finding that the truck's defects were responsible for Berge's eventual loss of her source of income; contrary evidence introduced by IH created no more than a conflict properly resolved by the jury.

B. *Lost Profits.*

■ The jury awarded Berge $144,718.85 in damages, the exact amount her counsel asked for in his closing argument. This amount was comprised of the following items: $30,000.85 for the sums Berge paid toward the purchase of the 1974 and 1975 IH trucks; $9,118 for lost profits in the year 1975, and $10,560 per truck per year for lost profits from 1976 to 1980, totaling $105,600. IH contends that the lost profits awarded were so uncertain and speculative as to be improper as a matter of law.

■ Lost profits to an established business may be recovered if their extent and occurrence can be ascertained with reasonable certainty; once their existence has been so established, recovery will not be denied because the amount cannot be shown with mathematical precision. (*Stott* v. *Johnston* (1951) 36 Cal.2d 864, 875-876 [229 P.2d 348, 28 A.L.R.2d 580]; *Grupe* v. *Glick* (1945)

26 Cal.2d 680, 692 [160 P.2d 832]; Civ. Code, §§ 3300, 3301.) Historical data, such as past business volume, supply an acceptable basis for ascertaining lost future profits. (*Guntert* v. *City of Stockton* (1976) 55 Cal.App.3d 131, 143 [126 Cal.Rptr. 690, 127 Cal.Rptr. 602]; *Grupe* v. *Glick, supra,* 26 Cal.2d at p. 692.) In some instances, lost profits may be recovered where plaintiff introduces evidence of the profits lost by similar businesses operating under similar conditions. (*Nelson* v. *Reisner* (1958) 51 Cal.2d 161, 171 [331 P.2d 17]; *Sanford* v. *East Riverside I. Dist.* (1894) 101 Cal. 275, 280 [35 P. 865]; *MacMorris Sales Corp.* v. *Kozak* (1968) 263 Cal.App.2d 430, 442-443 [69 Cal.Rptr. 719]; *Handley* v. *Guasco* (1958) 165 Cal.App.2d 703, 711-712 [332 P.2d 354].) In either case, recovery is limited to net profits. (*Kuffel* v. *Seaside Oil Co.* (1970) 11 Cal.App.3d 354, 366 [90 Cal.Rptr. 209].)

■■■ Berge attempted to show that her trucking business operated profitably. For 1974, she introduced her income tax return showing taxable profits of $5,504. She also introduced a journal she kept during the year showing her revenues and disbursements. Her revenues increased each quarter: $5,680.97 in the first quarter; $7,371.53 in the second; $13,933.91 in the third; and $21,280.44 in the fourth. The journal revealed, however, that her total expenditures during the year exceeded her total income by some $3,400.

For 1975, Berge introduced quarterly revenue statements showing total gross revenues of $29,998.29 in the first quarter; $30,235.29 in the second; $22,701.33 in the third; and only $3,567.23 in the fourth. Her income tax statement, combining $86,000 income from the trucking business and some $4,780 from the dispatching service; showed a net loss of $10,601 for the year.

In addition, Berge produced evidence concerning other businesses. Since 1976, 11 owner-operators hauling loads for Central Coast along the same routes Berge's employees had driven earned average gross revenues of $60,000 to $66,000 per year per truck. An expert testified that the average national net profit of owner-operators employing drivers varied between 14 to 16 percent. The jury's award was based exclusively on these latter numbers. In his closing argument, Berge's counsel calculated the yearly per truck profit figure as 16 percent of $66,000 and thus arrived at the figure of $10,560 per truck. The amount counsel requested for 1975 was less because he deducted payments Berge made on a truck she leased for two months while the 1975 truck was out of commission due to an accident.

These calculations cannot be sustained. Even assuming the evidence introduced provided an adequate historical basis for concluding that the business at least at some point at the end of 1974 or the beginning of 1975 operated at a net profit, it is obvious that any such profits in no way related or could be

related to a yearly per truck net profit figure.[7] The evidence also did not support this figure as the profits made by similar businesses. A plaintiff can rely on data from other enterprises only if she shows they operate under similar conditions, such as in the same area and with the same equipment. (See *Nelson* v. *Reisner, supra,* 51 Cal.2d 161, 171.) While the gross revenues earned by the 11 drivers working for Central Coast were relevant, the 16 percent profit margin achieved as a national average had no relation whatsoever to Berge's operation. For this reason, the net profit figure calculated was entirely speculative (see *Kuffel* v. *Seaside Oil Co., supra,* 11 Cal.App.3d 354, 366-367); the trial court's order must be affirmed as a matter of law.

For the court's guidance on remand, we indicate our views concerning two additional contentions raised by IH. ▉ First, the award of lost profits and the restitution of sums Berge paid for her trucks are not per se inconsistent. The California Uniform Commercial Code has not adopted a rule of election of remedies (Cal. U. Com. Code, § 2608, com. 1), and a similar award has been approved by the Supreme Court. (*Seely* v. *White Motor Co.* (1965) 63 Cal.2d 9, 14 [45 Cal.Rptr. 17, 403 P.2d 145].) The truck's reasonable rental value must, of course, be offset. (*Id.,* at pp. 14-15.) Second, the evidence introduced would sustain a finding that Berge could not have mitigated her damages. Her income after 1975 was never large enough to enable her to purchase another truck and reenter her business. ▉ Mitigation is not required where the injured person is financially unable to accomplish it. (*Valencia* v. *Shell Oil Co.* (1944) 23 Cal.2d 840, 847 [147 P.2d 558].) ▉ Lastly, the income Berge did procure after 1975 should be offset from any lost profits the jury may award her on retrial only if her trucking business, had it been operable, would have occupied the time she spent earning these sums. (See *Pfaff* v. *Fair-Hipsley, Inc.* (1965) 232 Cal.App.2d 274, 281-282 [42 Cal.Rptr. 624].)

### The Order Denying Attorney's Fees

▉ We now turn to Berge's appeal from the order denying her recovery of attorney's fees against IHCC. When IHCC cross-complained against Berge for the recovery of sums it had expended in repossessing the 1975 truck, it requested attorney's fees based on a clause in Berge's retail sales contract allowing recovery of such fees against Berge in case of a dispute.[8] At trial, Berge in-

---

[7]Berge operated one truck from January to October of 1974, and two trucks thereafter. In 1975, she operated a third truck during part of the year.

[8]This clause, part of a paragraph entitled "Delinquency Charges," provided that "Purchaser also agrees to pay all expenses, including reasonable attorney's fees to the extent permitted by law, incurred in the collection, by suit or otherwise, of any amount payable under this contract." The installment contract, according to which Berge had to pay some $14,600 in finance charges, also contained in a box entitled "For Dealer Use Only" the following printed notation: "Approved for Seller and Assigned to IHCC under the terms of Assignment #1, appearing on the reverse of this contract."

troduced evidence that IHCC had transferred both the repossessed truck and the sales contract back to IH, which in turn reimbursed IHCC for all its expenses. Based on this evidence, the court granted a nonsuit for Berge. Berge then requested attorney's fees under Civil Code section 1717 as the prevailing party.[9] The court denied the motion. It reasoned that since IHCC had transferred the contract to IH prior to filing its claim against Berge, IHCC's cause of action was not in fact founded "on a contract"; therefore, it concluded, section 1717 was inapplicable.

This result cannot be sustained. Quite clearly, IHCC based its claim against Berge on its right under the sales contract. Had IHCC prevailed, its recovery would have been based on the contract and would have included attorney's fees. Berge, however, defended herself successfully. To effectuate the legislative intent underlying section 1717, she must be awarded attorney's fees as the prevailing party. The section protects consumers against one-sided attorney's fees clauses which could otherwise be used to force settlements of unmeritorious claims. (*Care Constr., Inc.* v. *Century Convalescent Centers, Inc.* (1976) 54 Cal.App.3d 701, 704 [126 Cal.Rptr. 761].) This protection is available to the consumer even if he succeeds in defending himself on the theory that there was no enforceable contract to begin with. "[A]s long as the action here involved a contract it was 'on a contract' and within Civil Code, section 1717." (*Id.*, at p. 706 [lessee entitled to attorney's fees against lessor under Civ. Code, § 1717 even though lease contract between parties found invalid]; see also *Star Pacific Investments, Inc.* v. *Oro Hills Ranch, Inc.* (1981) 121 Cal.App.3d 447, 460 [176 Cal.Rptr. 546].)

IH asserts (apparently on behalf of IHCC) that section 1717 is inapplicable because IHCC was neither a "party" to the contract nor to the lawsuit. In view of the fact that Berge obtained a nonsuit against IHCC only after presentation of all the evidence, the latter assertion is frivolous. Similarly, it is clear that IHCC, the division of IH which all parties contemplated would undertake the financing of the purchase and which was specifically mentioned in the contract, was a "party" to the contract; in fact, the attorney's fees clause was intended for IHCC's benefit "in the collection . . . of any amount payable under this contract." Thus, cases such as *Canal-Randolph Anaheim, Inc.* v. *Wilkoski* (1978) 78 Cal.App.3d 477, 485-486 [144 Cal.Rptr. 474], are inapposite. The court's order denying Berge attorney's fees against IHCC must be reversed.

---

[9]Civil Code section 1717 provides in pertinent part: "(a) In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce the provisions of that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the prevailing party, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to costs and necessary disbursements."

The court's order granting IH a new trial on the issue of damages only is affirmed; its order denying Berge attorney's fees against IHCC is reversed and the case is remanded to the trial court to proceed in accordance with the opinion expressed herein. The parties to pay their own costs on appeal.

Feinerman, P. J., and Stephens, J., concurred.