See also, 9th Cir., 793 F.2d 1100.

**LAFARGE CONSEILS ET ETUDES, S.A., Plaintiff,**

v.

**KAISER CEMENT & GYPSUM CORP., Defendant-Counterclaimant/Appellant,**

v.

**The HOWARD P. FOLEY COMPANY, Counterdefendant/Appellee.**

Nos. 84–2764, 84–2765, 85–1789 and 85–1790.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 15, 1986.

Decided June 11, 1986.

Blecher, Collins & Weinstein, Maxwell M. Blecher, Les J. Weinstein, Christopher Layne, Los Angeles, Cal., for Kaiser Cement & Gypsum Corp.

Joe Sims, Robert F. McDermott, Jr., Kathryn M. Fenton, Jones, Day, Reavis & Pogue, Washington, D.C., for counter-defendant/appellee.

Before: POOLE, BEEZER and KOZINSKI, Circuit Judges

BEEZER, Circuit Judge:

Kaiser Cement Corporation appeals from the district court's denial of its motions to vacate the arbitration award and to set aside a judgment confirming that award. Foley's claims against Kaiser for breach of contract were arbitrated under a contract provision. The panel awarded Foley $3,786,194.[1] Kaiser's first motion to vacate the award was denied, and Kaiser now seeks to vacate the award and set aside the judgment confirming it, arguing that fraud in the arbitration proceedings tainted the award and judgment. Kaiser further argues that Foley is not entitled to attorney fees and that the existence and amount of the fees was inadequately documented.

We affirm.

## FACTS

In 1979, Kaiser invited bids from electrical contractors in preparation for remodeling its cement plant at Permanente, California.[2] The Howard P. Foley Company,

---

1. The panel awarded Foley $330,998 for change orders and $3,455,206 for delay and disruption.

2. In a separate action, Kaiser alleges that the Howard P. Foley Company (Foley), Fischbach & Moore, Inc. (Fischbach), and Roy M. Butcher Electric (Butcher) conspired to rig the bids on electrical work at the Kaiser plant. This antitrust claim is the subject of *Kaiser Cement v. Fischbach & Moore, Inc.,* No. 85–1846, in which summary judgment was granted for defendants.

Fischbach & Moore, Inc., and Roy M. Butcher Electric were the only companies to submit bids on the project. Erwin, formerly a Foley Company employee, did not testify at the arbitration but gave Kaiser a lengthy account of the bidding agreement between Foley, Fischbach and Butcher after receiving immunity in connection with his grand jury testimony.[3]

Erwin stated that shortly after Kaiser invited bidding on the project, Foley received a phone call from Fred Byrum of Fischbach in which Byrum said he could "control" everyone on that job. Erwin stated that he understood Byrum's statement to mean that "the other bidders would not submit their bids without first checking with Fred Byrum so that he could control the prices submitted by them." Erwin further stated that Byrum asked Lench, another Foley employee, what Foley would do and Lench replied that Foley intended to bid the job competitively. Lench wanted to keep his options, to submit either a competitive or a fixed bid, and "extract a chip" from Fred Byrum for some future job in return for "laying off" or submitting a "complementary" bid.[4]

Foley bid the project at $5,216,000. According to Erwin, Lench received a bid amount from Byrum of Fischbach on May 29, and submitted it along with the fabricated breakdown. On June 6, 1979, Erwin and Lench attended a pre-award meeting with Kaiser representatives. At the meeting it was apparent that Kaiser wanted to give the contract to Foley if Foley would reduce its costs. According to Erwin, he and Lench decided to underbid Fischbach. The next day Foley submitted a bid of $4,794,000. Kaiser did not respond to that bid. It instead issued revised blueprints and invited revised bids. To prevent Fischbach's learning of the underbidding, Lench and Erwin prepared two documents. First, they composed a revised proposal letter to Kaiser that contained a bid of $5,221,000, $5,000 over the initial bid, that could be read to Byrum. Second, they prepared an attachment to the letter, on plain white paper and unsigned, listing various deductions. By exercising the options in the attached letter, Kaiser could reduce the bid by $450,000. Kaiser chose to exercise options worth $420,000 and reduced the total cost to $4,801,000. Kaiser awarded the contract to Foley.

Erwin stated that he participated in the destruction of documents requested by subpoena from the federal grand jury sitting in Washington, D.C., which was investigating illegal price-fixing in the electrical construction industry. Erwin testified that Lench told him to destroy whatever documents would incriminate Foley. He destroyed telephone statements, supplier invoices, and estimates on all projects bid by the Martinez office. Erwin created a fictitious document retention policy which would explain the nonexistence of the destroyed documents.

Erwin also created false documents. Erwin said he was asked to provide Foley's arbitration counsel, Mr. Bryan, with a copy of the original endsheet for the Kaiser bid.[5] Erwin created a document entitled "Recap of Final Prices" and told Bryan that it had been created two days after Foley received Notice to Proceed from Kaiser.[6] It reflected manipulations of the figures for

---

3. At the time of the bidding, Erwin was employed by Foley. Erwin left his position with Foley, and was subsequently called to testify before a grand jury investigating price-fixing in the electrical construction industry.

4. A "chip" is the favorable consideration that one would receive from a competing bidder in return for an agreement not to submit a bid ("laying off") or submitting a bid price which is, by agreement with the competing bidder, higher than the bid submitted by the competing bidder (a "complementary" bid).

5. Endsheets are bid summary sheets that accompany the bid files.

6. Erwin states that this document was intended to mislead both Mr. Bryan and the arbitrators in determining the fee Foley was entitled to receive. This endsheet became Exhibit 7.

Lench's testimony in the arbitration contradicts Erwin. Lench maintained that EndSheet II (Recount of Final Prices), was created the day after he and Erwin met with Kaiser and agreed on the contract, June 7, 1979.

payroll, insurance, taxes, equipment depreciation, equipment rental, gas, oil, supplies, and overhead.

Kaiser contracted with Foley to perform electrical construction services over a ten-month period for a contract price of about $4.8 million.[7] The contract work took 24 months to complete. Foley originally planned to expend 67,000 manhours, but actually expended 216,000 manhours. Foley argues that Kaiser caused disruptions and delays which required extra work and resulted in increased costs to Foley. It was a multiple prime project, indicating that the owner, Kaiser Cement, had to coordinate the work of the prime contract. Because Kaiser was responsible for coordination of the work, Foley claims that the disruptions and delays constitute breach of the contract by Kaiser. Kaiser agreed to pay Foley $3.25 million above contract price in partial compensation for Foley's increased costs. When Kaiser refused to pay additional claims, Foley petitioned the Superior Court for Santa Clara County, for an order compelling arbitration and to foreclose a mechanics lien.[8]

On November 23, 1981, District Judge William W. Schwarzer, ordered serial arbitration, under the provisions of the United States Arbitration Act, 9 U.S.C. §§ 1–14 (1982).[9] The arbitration hearings covered fourteen nonconsecutive days of testimony and produced over 1,800 pages of transcript and about 400 exhibits. In the arbitration Foley argued that Kaiser had breached the construction contract and claimed $1.3 million in damages. To support this claim, Foley introduced evidence on how the bids were prepared, how project negotiations took place, and how the original bid amount was calculated. Foley introduced testimony on the relationship between damage and wage escalation, expert testimony on accounting, and 80 accounting schedules, based on source documentation.

The arbitrators requested an independent audit of Foley's actual costs "in order to verify the actual cost to Foley to perform the work on this project."[10] An audit was performed by Coopers & Lybrand and on May 31, 1983, the arbitrators awarded Foley $3,786,194. The district court found that Foley's action was based on breach of contract and confirmed the award on August 5, 1983.

## I *Judgment*

Kaiser appeals the district court's denial of its Rule 60(b) motion to set aside the judgment confirming the arbitration award. An order denying relief under Rule 60(b) is appealable, but the appeal brings up the correctness of the order only. It does not permit appellant to attack the arbitration award for error that could have been complained of on direct appeal.[11] Rule 60(b)(2) allows relief from a judgment or order because of newly discovered evidence which by due diligence could not have been discovered sooner. Under Fed.R.Civ.P. 60(b)(3), fraud or other misconduct of an

---

**7.** The prime contract was to start in July of 1979 and be completed on May 31, 1980.

**8.** Foley requested compensation for damages due to Kaiser's breach in the following categories:
  1. Labor escalation
  2. Labor disruption
  3. Uncompensated pending change orders
  4. Additional and extended overhead costs
  5. Butcher Electric's subcontractor claim
  6. Foley's claim for retention and approved change orders not paid
  7. Financing costs
  8. Attorneys' fees and claim preparation costs

**9.** Foley petitioned the state court to compel arbitration on June 22, 1981. The procedural history from June 22 until November 23, 1981, when Foley appeared in federal court, is unclear.

**10.** "The audit will be certified and will be limited to establishing the actual costs to Foley as they are recorded in the Foley project ledgers and files. The Arbitrators will adjust those costs for Workers' Compensation and self-owned equipment."

**11.** The district court explained that: "Kaiser seeks to apply clauses (2) and (3) to the arbitration proceeding, but fails to address the effect of the intervening judgment confirming the award." (Opinion at 5). Kaiser must state grounds for setting aside the court's judgment before reaching the arbitration award.

adverse party also justifies setting aside a judgment. The court may also grant relief under Rule 60(b)(6) for any other reason justifying relief. This court reviews denial of a Rule 60(b) motion for abuse of discretion. *In re Burley*, 738 F.2d 981, 988 (9th Cir.1984); *Plotkin v. Pacific Telephone & Telegraph Co.*, 688 F.2d 1291, 1292 (9th Cir.1982); *United States v. Russell*, 578 F.2d 806, 807 (9th Cir.1978). The appellate court's function in reviewing denial of a Rule 60(b) motion is not to determine whether the court was substantially correct in entering the judgment from which relief is sought, but is limited to deciding whether the court abused its discretion in ruling that sufficient grounds for disturbing the finality of the judgment were not shown. *Russell*, 578 F.2d at 807.

A motion brought under 60(b)(6) must be based on grounds other than those listed in the preceding clauses. *Corex Corp. v. United States*, 638 F.2d 119, 121 (9th Cir. 1981). Clause 60(b)(6) is residual and "must be read as being exclusive of the preceding clauses." In addition, the clause is reserved for "extraordinary circumstances." *Id.; Martella v. Marine Cooks & Stewards Union*, 448 F.2d 729, 730 (9th Cir.1971), *cert. denied*, 405 U.S. 974, 92 S.Ct. 1191, 31 L.Ed.2d 248 (1972). Because Kaiser failed to allege "extraordinary circumstances" and relied exclusively upon its fraud and newly discovered evidence arguments, the district court held that Rule 60(b)(6) was not applicable.

■ Under Rule 60(b)(3), the moving party must establish by clear and convincing evidence that a judgment was obtained by fraud, misrepresentation, or misconduct, and that the conduct complained of prevented the moving party from fully and fairly presenting the case. *Bunch v. United States*, 680 F.2d 1271, 1283 (9th Cir. 1982); *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1339 (5th Cir.1978). Kaiser failed to identify any fraud, misrepresentation or misconduct in the court proceedings. Fraud alleged in the arbitration does not render the judgment fraudulently obtained.

■ Kaiser also argues that the court made five errors which prevented it from fully and fairly presenting its case. The five alleged errors are (1) its ruling that Foley's alleged fraud and bid-rigging were not material, (2) its conclusion that Kaiser did not use due diligence in discovering evidence of fraud, (3) its refusal to allow Kaiser to depose Lench, (4) its consideration of "incompetent testimony of Foley's declarants", and (5) its failure to hold an evidentiary hearing. These errors do not constitute "extraordinary circumstances" under 60(b)(6) and do not otherwise justify setting aside the judgment confirming the award.

## II  *Award*

■ The United States Arbitration Act, 9 U.S.C. § 10(a) (1982), permits the vacation of an arbitration award, "[w]here the award was procured by corruption, fraud, or undue means." Section 12 of the Act provides that "[n]otice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered." The arbitrators issued their decision on May 31, 1983, and Kaiser filed its original motion to vacate on June 24, 1983. The motion was denied on August 5, 1983 when the district court confirmed the arbitration award. Kaiser did not seek an appeal of the court's decision. Kaiser now attempts to revive the motion to vacate by way of a Rule 60(b) motion with a claim of newly discovered evidence.

The federal Arbitration Act provides the exclusive grounds for challenging an arbitration award within its purview. *Corey v. New York Stock Exchange*, 691 F.2d 1205, 1212 (6th Cir.1982). "Once an arbitrator has rendered a decision the award is binding on the parties unless they challenge the underlying contract to arbitrate pursuant to section 2 or avail themselves of the review provisions of sections 10 and 11." *Id.* Otherwise, "[t]he three month notice requirement of section 12 for appeal of an award on section 10 or 11 grounds [would be] meaningless if a party to the arbitra-

tion proceeding [could] bring an independent action asserting such claims outside of the statutory time period provided for in section 12." *Id.* at 1213.

Kaiser's current motion seeking to vacate the arbitration award was filed August 3, 1984, approximately one year after the award was made. Thus, direct attack of the award pursuant to section 10 of the Arbitration Act is foreclosed. In addition, Kaiser may not now collaterally attack the award under the guise of a motion to set aside the judgment confirming the award.

Even if Kaiser's motion was timely, Kaiser fails to allege fraud which justifies vacation of the award. The Arbitration Act allows vacation of an award "where the award was procurred by corruption, fraud, or undue means." 9 U.S.C. § 10. Kaiser must show that the fraud was (1) not discoverable upon the exercise of due diligence prior to the arbitration, (2) materially related to an issue in the arbitration, and (3) established by clear and convincing evidence. *Dogherra v. Safeway Stores, Inc.*, 679 F.2d 1293, 1297 (9th Cir.), *cert. denied*, 459 U.S. 990, 103 S.Ct. 346, 74 L.Ed.2d 386 (1982).

Kaiser stated that during the arbitration it suspected that Erwin had falsified documents.[12] Neglecting to subpoena Erwin, under these circumstances, vitiates its claim that the alleged fraud was not discoverable by due diligence. For the same reason, Erwin's statements do not constitute newly discovered evidence.[13] Newly discovered evidence does not justify vacation of an award. *Shearson Hayden Stone, Inc. v. Liang*, 653 F.2d 310, 313 (7th Cir.1981). But even if newly discovered evidence did justify vacation of the award, Kaiser's failure to exercise due diligence and subpoena Erwin bars it from claiming this evidence to be new.

### III *Entitlement To Attorney Fees*

The district court awarded Foley attorney fees incurred in opposing Kaiser's motion. The Kaiser-Foley contract provides that Kaiser is entitled to attorney fees in any action to enforce the contract.[14] The contract also provides that it is to be interpreted in accordance with California law. California Civil Code, section 1717 makes the contract provision for attorney fees applicable to Foley also, if Kaiser's motion constitutes an action "on the contract." [15]

---

**12.** Patrick Duffy, Kaiser's arbitration counsel stated that " [d]uring the arbitration I suspected that [Exhibits 2 and 7] may have been tampered with and I voiced this concern to the arbitrators." In his opening statement, Kaiser's counsel told the arbitrators that the bid documents might be false and he would attempt to prove that they were. The court found that evidence was not newly discovered. "Kaiser filed its original motion to vacate the arbitration award fully aware of the allegedly fraudulent nature of these exhibits and the testimony given in support of them ...".

**13.** Kaiser argues that Erwin's sudden willingness to testify, a year after the arbitration, constitutes new evidence which merits vacation of the award. Erwin was granted immunity when subpoenaed by a federal grand jury investigating price-fixing in the electrical construction industry. Pursuant to the grant of immunity, Erwin testified before the grand jury for four days. He testified to the agreement to fix prices on the electrical work in the Kaiser project, the withholding and destruction of documents in · response to a subpoena from another federal grand jury, and the creation of false documents which were ultimately used in the Kaiser arbitration.

**14.** Article 28 of the Permanente project contract between Kaiser and Foley provided that, in certain circumstances, Kaiser could recover its attorney fees if forced to litigate against Foley in connection with a dispute arising out of the contract.

**15.** California Civil Code § 1717 provides:

In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce the provisions of the contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the prevailing party, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to costs and necessary disbursements. Section 1717 is calculated to provide mutuality of remedy and eliminate one-sided attorney fees clauses which would otherwise be used to force settlements of unmeritorious claims. *Berge v. International Harvester Co.*, 142 Cal.App.3d 152, 164, 190 Cal.Rptr. 815, 824 (1983). "This protection is available to the consumer even if he succeeds in defending himself on the theory that there was no enforceable contract to begin

**1340**

Kaiser argues that because its motion to vacate was based upon Fed.R.Civ.P. 60(b), it was based on a right granted by federal procedure, and state substantive law, including section 1717, does not apply. Kaiser bases its argument on *In re Johnson,* 756 F.2d 738 (9th Cir.), *cert. denied,* — U.S. ——, 106 S.Ct. 88, 88 L.Ed.2d 72 (1985), in which this court held that when the state law governing contractual relationship is not considered in the federal litigation, then the action is not one "on the contract" to which state law should be applied. The Johnsons purchased property from the Righettis under a deed of trust. The Johnsons filed for reorganization under Chapter 11, and the bankruptcy court stayed the Righettis from foreclosing the deed of trust. The Righettis filed a request for relief from the stay, and the Johnsons incurred attorney fees in opposing the motion. The promissory note executed by the Johnsons and accompanying the deed of trust provided that the Johnsons would reimburse the Righettis for any attorney fees incurred in enforcing those documents. The bankruptcy court awarded the Johnsons their attorney fees under Cal.Civ.Code, section 1717 after denying the motion for relief.

This court held that stay proceedings are not proceedings "on a contract" even though the Righettis sought to foreclose a deed of trust because substantive issues regarding the underlying contract are not involved in bankruptcy stay litigation. *Id.*

at 740; *see In re Coast Trading Co.,* 744 F.2d 686, 693 (9th Cir.1984) ( "the question of the applicability of the bankruptcy laws to particular contracts is not a question of the enforceability of the contract but rather involves a unique, separate area of federal law" ).[16]

■ In this case, Kaiser moved to compel arbitration pursuant to its contract with Foley. The arbitration concerned Foley's entitlement to payment for services rendered pursuant to the contract. That arbitration resulted in an award. Kaiser was contractually bound by the award unless grounds existed for vacation of the award under 9 U.S.C. § 10. Kaiser did challenge the award as procured by fraud. Kaiser's motion to vacate the award and set aside the judgment confirming the award arose directly out of the contract, as did Foley's opposition to Kaiser's motion. The Kaiser-Foley contract provides that Kaiser is entitled to attorney fees in actions to enforce the contract. We conclude that Kaiser's motion is an action based on the contract and therefore the contractual provision for attorney fees applies. Unlike *Johnson,* the underlying contract between the parties is not collateral to the proceedings but plays an integral part in defining the rights of the parties by setting forth arbitration as the agreed means of dispute resolution.

Kaiser argues that its motion was not "on the contract" because Kaiser's defense was that the arbitration award was pro-

with. '[A]s long as the action here involved a contract it was "on a contract" and within Civil Code, section 1717.'" *Id.* at 164, 190 Cal.Rptr. 815 (quoting *Care Construction, Inc. v. Century Convalescent Centers, Inc.,* 54 Cal.App.3d 701, 706, 126 Cal.Rptr. 761, 764 (1976)).

**16.** This court has given the requirement that an action be "on the contract" a liberal scope. While a tort action for fraud arising out of a contract is not an action on a contract, intentional misrepresentation may render a contract void or provide a basis for rescission or reformation. An action to avoid, reform or rescind a contract due to intentional misrepresentations is an action on a contract. *Star Pacific Investments, Inc. v. Oro Hills Ranch, Inc.,* 121 Cal. App.3d 447, 461, 176 Cal.Rptr. 546, 554 (1981).

Here, since the language of the deed of trust did not limit the situation in which attorney's

fees would be recoverable to any particular form of action involving the contract, the suit resulting in a judgment invalidating the purported agreement between the parties for lack of consideration and alternatively for intentional misrepresentation was an action "on the contract" which permitted an award of attorney fees under section 1717. *Star Pacific Investments,* 176 Cal.Rptr. at 555. Under California law, "where claims and counterclaims arise in connection with a contract containing an attorneys' fees provision, the party who obtains a favorable judgment is deemed to be the prevailing party even though he did not successfully obtain all the relief which he sought in the action." *Matter of Sparkman,* 703 F.2d 1097, 1100 (9th Cir.1983).

cured by fraud. This argument is meritless. As previously stated, Kaiser was attempting to avoid that part of the contract binding Kaiser to resolution of its dispute with Foley by way of arbitration. The fact that it attempted to do this by way of a fraud defense does not change the nature of the action.

Looking at the Kaiser-Foley contract, it provides that it is to be interpreted in accordance with California law. Consequently, we look to California law, specifically Cal.Civ.Code, section 1717, in interpreting the attorney fee provision. Because section 1717 makes the attorney fee provision applicable to Foley, we find that the district court was correct in awarding Foley attorney fees.

## IV  Attorney Fee Documentation

A district court's award of attorney fees is reviewed for abuse of discretion. *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69 (9th Cir.1975), *cert. denied*, 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976).

Foley moved for attorney fees in the amount of $259,820.11, based upon Article 28 of the construction contract and section 1717(a) of the California Civil Code. In support of its motion for fees, Foley submitted the affidavits of Sims and Bryan and the Declaration of Dillon. These documents complied with Local Rule 270–2.[17] Foley's award of attorney fees compensates for the services of Joe Sims, Haradon Dillon, and Carroll Bryan. Kaiser argues that the district court abused its discretion in granting Foley's application because the Sims and Dillon statements were not sufficiently detailed. Kaiser alleges that Foley did not establish that the Dillon and Sims services (1) were reasonably necessary to the legal representation of Foley, (2) were reasonable in hours expended, and (3) that the billing rate was customary in the area. Kaiser attacks the award of attorney fees for Bryan's services because the services rendered on August 23rd and 24th were used to prepare Bryan's deposition as a fact witness, not services rendered in his capacity as attorney. Also, Kaiser opposes Bryan's claim of attorney fees for 13 hours on September 12th because that constituted time necessary to give a deposition.

In its order of February 14th, the district court awarded Foley $207,700 in attorney fees and costs.[18] In calculating reasonable attorney fees the court must consider the following factors: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill necessary to perform the legal services properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or circumstances, (8) the amount involved and the results obtained,

---

**17.** Rule 270–2 provides:
Unless otherwise ordered, the application [for attorneys' fees] shall be supported by declarations or affidavits containing the following information:
(a) A statement that counsel have met and conferred or that the applying attorney has made a good faith effort to arrange such a conference;
(b) A statement of the services rendered by each person for whose services fees are claimed together with a summary of the time spent by each person, and a statement describing the manner in which time records were maintained. Depending on the circumstances, the judge may require submission of the abstract of the contemporary time records or the production of these records for inspection, including in camera inspection, as the judge deems appropriate;
(c) A brief description of relevant qualifications and experience and a statement of the

customary hourly charges of each such person or of comparable prevailing hourly rates or other indication of value of the services.

**18.** Breakdown of fees and costs awarded:

|  | Fees | Costs |
| --- | --- | --- |
| Jones, Day (Sims), Lead counsel | $119,581 | $21,399 |
| McInerney & Dillon (Dillon), Lead counsel | 44,280 | 10,967 |
| Taylor & Bryan (Bryan), Arbitration counsel | 8,778 | 2,695 |
| Totals | $172,639 | $35,061 |

| | |
| --- | --- |
| Fees Total | $172,639 |
| Costs Total | $ 35,061 |
| Grand Total | $207,700 |

(9) the experience, reputation and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relations with the client, and (12) awards in similar cases. *Kerr*, 526 F.2d at 69–70. A complete failure to consider these guidelines constitutes an abuse of discretion. *Martinez v. Idaho First National Bank*, 755 F.2d 1376, 1378 (9th Cir. 1985); *Kerr*, 526 F.2d at 70. Consideration of only three factors and conclusion that the remaining nine are not relevant is not an abuse of discretion.

Kaiser argues that Foley actually received everything it asked for and that somehow implies an inadequate inquiry by the district court. Foley originally claimed $259,820.11 but $35,061.16 was for a bonus. The bonus claim was not supported in the application, and was not addressed by the court in its order awarding attorney fees. Apart from the bonus claim, Foley claimed $207,952.66. Foley received $207,700.

The court's award of attorney fees was supported by affidavits and exhibits that included contemporaneous time records maintained by the law firms involved. The exhibits and affidavits disclosed the hours billed, the nature of the professional services rendered, and the customary hourly rate of each attorney. Each attorney specified his professional credentials. Each firm submitted a description of the services performed, by whom they were performed, and that individual's hourly rate at the time of performance. In some instances the time devoted to each service was reflected in a contemporaneous record. Account statements reflected both attorney's fees and costs, such as travel expenses.

The district court meticulously considered the relevant factors. The court found that a large amount of money, $3.8 million, was at stake. The work was complicated and time consuming. Kaiser raised numerous legal and factual issues in its motion to vacate. Foley's counsel was required to work with a voluminous record of the arbitration hearing and to do considerable legal research. Foley's counsel worked under time pressure. Counsel for Foley were of the "highest quality," experienced and competent.

The court examined the affidavits and exhibits submitted and held that the time charged was reasonably expended, that there was no duplication of effort and that Foley's retention of three firms was reasonable. Each firm served Foley in a different respect. Jones, Day, Reavis & Pogue served as lead counsel because it had represented Foley in related litigation and was familiar with the issues. McInerney & Dillon had represented Foley in connection with the arbitration and served as local counsel. Taylor & Bryan brought to Foley its familiarity with the arbitration. The court held that the hourly rates charged were reasonable in light of the experience and standing of the lawyers involved and the nature and circumstances of the work.

█ The court's analysis was thorough and thoughtful. It reflected consideration of the relevant factors. The court did not abuse its discretion in granting Foley $207,700 in attorney fees.

Under Cal.Civ.Code, section 1717, Foley is entitled to attorney fees incurred in defending this appeal. If Foley makes application to this court within 30 days of this order, it will be awarded its fees. The award is subject to reconsideration if opposition to the application is filed within ten days of application.

The decision of the district court is AFFIRMED.